**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**REAL PROPERTY KNOWN AND NUMBERED AS 429 SOUTH MAIN STREET, NEW LEXINGTON, OHIO, Defendant,**

William G. Swallow, Claimant–Appellant.

**No. 94–3048.**

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 2, 1995.

Decided May 9, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 25, 1995.

Marcia J. Harris, Office of the U.S. Atty., Columbus, OH (briefed), for the United States.

Randy L. Happeney (briefed), Dagger, Johnston, Miller, Ogilvie & Hampson, Lancaster, OH, for William G. Swallow.

Before: GUY, BOGGS, and SILER, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which SILER, J., joined. GUY, J. (pp. 1422–1424), delivered a separate opinion concurring in part and dissenting in part.

BOGGS, Circuit Judge.

William Swallow appeals the district court's granting of the government's motion for summary judgment on its civil asset forfeiture complaint pursuant to 21 U.S.C. § 881(a)(7). We affirm the district court's decision to grant the government's summary judgment motion as against challenges based on the Excessive Fines Clause of the Constitution and the lack of probable cause. However, we remand the case so the district court can determine whether Swallow should have received predeprivation notice and a hearing.

## I

Swallow sold marijuana out of his house to a confidential informant on August 9, August 19, and August 20, 1991. He pled no contest to three counts of trafficking marijuana under Ohio law, and was sentenced to a fine of $2000 and one year in jail for each count, with the jail sentences running concurrently.

On December 23, 1993, the government filed a complaint for forfeiture of Swallow's house under 21 U.S.C. § 881(a)(7), which provides for the forfeiture of:

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements which are used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter....

That same day, the trial court issued an order finding probable cause to believe that the property was subject to forfeiture, and issued an order for a warrant of arrest *in rem*. This order was issued without notice to Swallow, and without a hearing.[1] That same day, the Clerk of the District Court issued the warrant of arrest *in rem*.

The government then took several actions against Swallow's property. It informs us in its brief that it filed a *lis pendens* with the Perry County Court of Common Pleas on December 29, 1992. According to the record, the Marshal executed the arrest warrant on January 6, 1993, but it is not clear from the record precisely what this "arrest" involved. The Marshal served Swallow and the Trea-

---

1. The order directed the Marshal "to enter upon and arrest the defendant property, entering said property for the purpose of determining the physical condition of the property ... and to maintain custody of said property." The Marshal "shall use its discretion and whatever means appropriate to protect and maintain said defen-

dant property." Also, the order instructed the Marshal to "execute said Warrant ... and[ ] post upon said real property in an open and visible manner notice of such seizure at the time thereof, making the government's seizure open and notorious." The order also instructed the Marshal to publish public notice of the seizure.

surer and Auditor of Perry County with copies of the summons, complaint, and warrant against his property. It published public notice of the forfeiture action in the *Perry County Tribune.* Both Swallow and the government state in their pleadings before this court that the government also executed an occupancy agreement with Swallow, but that agreement is not included in the record before us.

Appellant filed a *pro se* "claim" on April 27, 1993, and an answer to the complaint on May 19, 1993. The United States filed a motion for summary judgment on September 24, which the court granted on December 13.

The district court's opinion analyzed the burden of proof according to the standards set forth in 19 U.S.C. § 1615, which provides:

> In all suits ... for the forfeiture of [property], the burden of proof shall lie upon [the] claimant ...: *Provided,* That probable cause shall be first shown for the institution of such action, to be judged by the court....

The burden was initially on the government to show probable cause to believe that criminal activity occurred, and probable cause that there was a nexus between the activity and the property. *United States v. $5,000 in United States Currency,* 40 F.3d 846, 848 (6th Cir.1994); *United States v. $22,287 in United States Currency,* 709 F.2d 442 (6th Cir.1983). The district court found that the government established probable cause by submitting an affidavit from an investigating FBI agent that contained detailed information about the drug sales to the confidential informant at Swallow's house, and a copy of Swallow's Perry County, Ohio, judgment entry of conviction.

Once the government showed probable cause, the burden shifted to Swallow to prove by a preponderance of the evidence that the property was not used to commit or facilitate

an offense under Title 21. *United States v. 566 Hendrickson Blvd.,* 986 F.2d 990 (6th Cir.1993); *United States v. $50,000 in United States Currency,* 757 F.2d 103 (6th Cir.1985). The court noted that Swallow did not produce evidence to establish that the offenses were not committed at his house or to refute any of the information in the affidavit. The court found that the government was entitled to a judgment of forfeiture upon an unrebutted showing of probable cause, citing *566 Hendrickson Blvd.,* 986 F.2d at 995.

The district court rejected Swallow's claim that, under *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the court was required to fix the value of the house and conduct an Excessive Fines analysis.[2] The court held that it was Swallow's burden to produce evidence to support his defense, and found that he did not make any representations to the court about the value of the property, nor did he allege that forfeiture violated the Excessive Fines Clause.[3]

The court granted the government's motion for summary judgment, which Swallow now appeals. Swallow raises two major issues; whether the Supreme Court's decision in *United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), required the district court to provide Swallow with notice and a hearing before issuing a judgment of forfeiture, and whether the forfeiture was an excessive fine under the Eighth Amendment.

## II

We review the granting of summary judgment *de novo.* Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

---

**2.** "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

**3.** Nevertheless, the court notes that in the forfeiture complaint, the government set the value of Swallow's house at about $83,700. The court observed that, if Swallow had been charged in

federal court, he could have faced 10 years in prison and a potential fine of $500,000 for each count. The court also noted that Swallow used the house repeatedly for drug transactions, and found that "the defendant property has [a] sufficiently close relationship to the offense to support forfeiture under § 881(a)(7)."

Swallow first claims that the court violated his due process rights under the Fifth Amendment by not providing a hearing, as required in *Good*, —— U.S. at ——, 114 S.Ct. at 505.

The Supreme Court issued the *Good* decision the same day that the trial court ruled for the government on its summary judgment motion in this case. Although Swallow did not raise this issue below, we address it on appeal, because the question presents a purely legal issue not available to Swallow below, and failure to consider it could result in a miscarriage of justice. *Foster v. Barilow*, 6 F.3d 405 (6th Cir.1993) (citing *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988)). In addition, both parties have briefed the issue.

First, we must determine in what circumstances *Good* requires predeprivation notice and a hearing, and in what situations the government can act without this process. Then, we need to determine whether Swallow's forfeiture fits under the first category or the second. If we determine that he was entitled to notice and a hearing before forfeiture, we then must decide what remedy he should receive for this violation of his due process rights.

### A. When is a hearing required under Good?

The general rule is that an individual should receive predeprivation notice and a hearing. *Good*, —— U.S. at —— – ——, 114 S.Ct. at 500–01. "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property...." *Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), *quoted in Good*, —— U.S. at ——, 114 S.Ct. at 501. Civil asset forfeiture has become an important law enforcement tool, not simply to remove from criminals the spoils of crime, but to supplement law enforcement budgets. *See United States v. All Funds on Deposit in Any Accounts, Merrill Lynch*, 801 F.Supp. 984, 989 (E.D.N.Y.1992) ("As the 'drug war' has escalated, the number of forfeiture cases in the United States has burgeoned. Taking away the profits of drug crimes through forfeiture is a powerful weapon to cripple drug-trading enterprises. Unfairly wielded it can place commercial enterprises at a terrible disadvantage."), *aff'd*, 6 F.3d 37 (2d Cir. 1993); David Heilbroner, *The Law Goes on a Treasure Hunt*, N.Y. Times, Dec. 11, 1994, § 6 (Magazine) at 70 (reporting that since 1984 federal agencies executed over 200,000 forfeitures, netting $3.6 billion in assets). Justice Thomas suggested that it was the Court's "implicitly expressed distrust of the Government's aggressive use of broad civil forfeiture statutes" that motivated the Court's due process ruling in *Good*. *Good*, —— U.S. at ——, 114 S.Ct. at 515 (Thomas, J., concurring in part and dissenting in part).

Nevertheless, the *Good* Court recognized that not all forfeitures require a hearing. The Court noted that the forfeiture of a yacht could proceed without predeprivation notice and a hearing, because the "ease with which an owner could frustrate the Government's interests in the forfeitable property created a '"special need for very prompt action"' that justified the postponement of notice and a hearing until after the seizure." *Id.* at ——, 114 S.Ct. at 500 (quoting *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (quoting *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 2000)). The *Good* Court cautioned that "[w]e tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in '"extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."' *Id.* at ——, 114 S.Ct. at 501 (quoting *Fuentes*, 407 U.S. at 82, 92 S.Ct. at 1995 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)); *see also Board of Governors of Federal Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1001 (5th Cir.1994) (freezing assets as provided in 12 U.S.C. § 1818(i)(4) is extraordinary situation not requiring predeprivation notice and hearing).

The Court concluded that determining whether a particular seizure of property justifies an exception to the general rule providing notice and a hearing requires "an examination of the competing interests at stake." The *Good* Court evaluated these competing interests by applying the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *Good,* —— U.S. at ——, 114 S.Ct. at 501. The *Mathews* test balances the private interest affected by the official action; the risk of error through the procedures used, as well as the probable value of additional or substitute procedural safeguards; and the Government's interest, including the fiscal and administrative burdens that additional procedural requirements would impose. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

In *Good,* the Court applied the *Mathews* test to the forfeiture at issue, and found that the private interest affected—the property interest in a person's home—"weigh heavily in the *Mathews* balance." *Good,* —— U.S. at ——, 114 S.Ct. at 501. Furthermore, the Court found that the practice of *ex parte* seizure created "an unacceptable risk of error" with "little or no protection to the innocent owner," because the government, at the *ex parte* stage, need only show probable cause to believe that the "property was 'used or intended to be used'" to commit a felony narcotics offense. *Id.* at ——, 114 S.Ct. at 502 (quoting 21 U.S.C. § 881(a)(7)). The Court noted that the protection of a predeprivation hearing was especially important in the asset forfeiture context, because "the Government has a direct pecuniary interest in the outcome of the proceeding." *Ibid.* The Court added that a post-deprivation hearing was not an adequate substitute, since with clogged civil dockets, a claimant might not receive his hearing for many months. *Ibid.*

Turning to the third *Mathews* factor, the *Good* Court found that the need for prompt action was not present in real property forfeiture actions, "[b]ecause real property cannot abscond." Furthermore, the Court added that the government can preserve the property while obtaining a forfeiture judgment using methods short of seizure, such as by filing a *lis pendens* or obtaining a re-

straining order. Therefore, the Court found that postponing seizure until after an adversarial hearing did not pose an undue burden on the government. *Good,* —— U.S. at ——, 114 S.Ct. at 504.

The *Good* Court concluded that the owner of the seized property should have received predeprivation notice and a hearing. The Court further noted that the burden would be on the government to demonstrate that there were exigent circumstances that would justify not providing the owner with notice and a hearing. *Id.* at ——, 114 S.Ct. at 505.

### B. Should Swallow have received predeprivation notice and a hearing?

The issue before us is plain: If Swallow's house was "seized," due process requires that the government provide him with predeprivation notice and a hearing. In *Good,* the district court issued a warrant of arrest *in rem* on Good's house, after which the government seized the house. The government allowed Good's tenants to remain in the house, subject to an occupancy agreement directing that future rents be paid to the United States Marshal. *Good,* —— U.S. at —— – ——, 114 S.Ct. at 497–98. The *Good* Court determined that the government had asserted control over Good's property amounting to a seizure. *Id.* at ——, 114 S.Ct. at 504.

However, the *Good* Court indicated that exercise of authority, short of seizure, would not trigger the notice and hearing requirement. In particular, the government could file a *lis pendens* or obtain a restraining order without a predeprivation hearing, under the *Mathews* evaluation set forth in *Good. Id.* at ——, 114 S.Ct. at 503.

Both parties in the case before us make a variety of factual assertions in their briefs. Swallow claims that the government began exercising ownership rights in Swallow's property after receiving the order for a warrant of arrest *in rem.* Both Swallow and the government state that the government required Swallow to sign an occupancy agreement on January 6, 1993, when the Marshal "arrested" the property.

However, the government argues that *Good* only applies to actual seizure of proper-

ty. The government claims that Swallow's property was only constructively seized. The government claims that it took steps short of actual seizure that would not trigger the notice and hearing requirement.

■ The analysis in *Good* employed the extensive factual record of that case to determine that the government's interest in protecting the property did not justify seizure without notice and a hearing. *Good,* —— U.S. at ——, 114 S.Ct. at 504. The record before this court is much more abbreviated. The district court was not presented with verified or undisputed facts to support the allegations that either party raises on appeal. The briefs before us are rich with unverified and unsubstantiated assertions. At first blush, it appears that in both *Good* and this case the government exercised similar levels of control over the property by executing occupancy agreements. This may indicate that the government seized Swallow's property, and that Swallow should have been provided with preseizure notice and a hearing. On the other hand, the key part of the occupancy agreement in *Good* diverted rents from the owner to the United States; in this case there is no allegation of actual interference with Swallow's use of his property. We do not have a complete record on which to analyze these arguments and apply *Good.* We therefore remand to the district court for that court to evaluate the seizure at issue based on a fuller factual record.

■ To determine whether the government's proceeding against Swallow's house required predeprivation notice and a hearing, the district court on remand should evaluate the seizure under *Mathews v. Eldridge.* Unlike the burden-shifting regime provided in § 881(a)(7), such review does not depend on Swallow having first borne any evidentiary burden—as *Good* states, the government bears the burden of demonstrating that exigent circumstances require that the general rule of predeprivation notice and a hearing does not apply. The government can meet this burden by demonstrating that it only took measures short of a seizure against Swallow's property, not amounting to a deprivation of property. *Good,* —— U.S. at ——, 114 S.Ct. at 505; *see also Connecticut*

*v. Doehr,* 501 U.S. 1, 18, 111 S.Ct. 2105, 2116, 115 L.Ed.2d 1 (1991).

We cannot determine whether Swallow should have received predeprivation notice and a hearing on the facts before us, so we do not reach the issue of what remedy, if any, he should receive.

### III

Swallow next argues that the forfeiture violated the Eighth Amendment's Excessive Fines Clause, relying on *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin,* the Supreme Court found that civil forfeiture serves to punish the owner, and that the forfeiture provisions of § 881(a)(7) are subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Id.* at ——, 113 S.Ct. at 2812. However, the Court declined to establish a test to determine whether a forfeiture was constitutionally "excessive," instead leaving that question for lower courts to consider in the first instance. *Ibid.* In his concurrence, Justice Scalia announced that "[t]he relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Id.* at ——, 113 S.Ct. at 2815 (Scalia, J., concurring). The majority commented on Scalia's recommendation by noting that "[w]e do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Id.* at —— n. 15, 113 S.Ct. at 2812 n. 15.

■ Swallow did not meet his burden below of producing evidence to demonstrate that the seizure was excessive under the Eighth Amendment. The court correctly granted the government's motion for summary judgment in the absence of such evidence. *566 Hendrickson Blvd.,* 986 F.2d at 995.

We recognize that this court has not announced a test to determine whether a forfei-

ture is an excessive fine under the Eighth Amendment. Other courts have applied a variety of approaches. Some courts have applied an "instrumentality" test similar to that recommended by Justice Scalia in his concurrence in *Austin. See United States v. One Parcel Property Located at 427 & 429 Hall Street*, 842 F.Supp. 1421, 1423 (M.D. Ala.1994); *United States v. One Parcel Property Located at 9638 Chicago Heights, St. Louis*, 831 F.Supp. 736 (E.D. Mo.1993), *rev'd on other grounds*, 27 F.3d 327 (8th Cir.1994) (dicta noting that "instrumentality" analysis inadequate). Other courts apply a "proportionality" test that compares the value of the forfeited item to the federal fine applicable to the crime. *United States v. Certain Real Property Located at 11869 Westshore Drive, Putnam Township*, 848 F.Supp. 107, 111 (E.D.Mich.1994) (forfeiture of a residence valued between $85,000 and $105,000 not excessive because claimant would have faced a federal fine of $250,000). The court below examined the forfeiture of Swallow's property using both approaches, and found that the forfeiture was not an excessive fine. Opinion and Order at 8–9. We seriously doubt that Swallow could meet his burden to produce evidence that this forfeiture was excessive under either a "instrumentality" or a "proportionality" test. We do not find that this case provides us with the proper occasion for announcing our test for an excessive fine.

## IV

▪ Swallow also raises on appeal the issue of whether the district court properly found that the house was used to facilitate a drug offense. After reviewing the record, we find that the court correctly granted summary judgment on this issue. Swallow failed to produce evidence to rebut the government's showing of probable cause. *566 Hendrickson Blvd.*, 986 F.2d at 995.

## V

We AFFIRM IN PART, finding that Swallow did not raise an issue of material fact to contest the government's assertion that he sold drugs from his house, or to contest the forfeiture as an excessive fine. However, Swallow's procedural due process rights may have been violated because the order to arrest the property, granted in an *ex parte* proceeding, may have allowed the government to seize Swallow's property without notice to Swallow or an opportunity for him to be heard. Therefore, we REMAND IN PART to the district court to evaluate a more complete factual record and determine whether this order resulted in a "seizure" of Swallow's property that required predeprivation notice and a hearing.

GUY, Circuit Judge, concurring in part and dissenting in part.

I agree with the court that this case should be remanded in light of the Supreme Court's decision in *United States v. James Daniel Good Real Property*, ——— U.S. ———, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

I respectfully dissent from the excessive fines analysis, however.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Austin v. United States*, ——— U.S. ———, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applies to civil forfeiture actions. It left for the lower courts to determine, however, the appropriate test for determining whether a forfeiture is excessive in certain circumstances. *Id.* at ———, 113 S.Ct. at 2812. The court noted in a footnote that, in his concurrence, Justice Scalia suggested that "the sole measure of an in rem forfeiture's excessiveness is the relationship between the forfeited property and the offense." *Id.* at ——— n. 15, 113 S.Ct. at 2812 n. 15 (citing *id.* at ——— ———, 113 S.Ct. at 2814–15). The Court did not adopt the Scalia view, however, and held instead: "We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Id.* at ———, 113 S.Ct. at 2812.

This circuit has not addressed what factors are relevant in determining whether a forfeiture violates the Eighth Amendment. Other circuits, however, have considered the issue. For example, the Fourth Circuit adopted an "instrumentality test" in *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). Under that test, the court must consider (1) the nexus between the offense and the property, (2) the role and culpability of the owner, and (3) the possibility of separating the offending property from the remainder. In considering the first factor, the nexus between the offense and the property, the court should consider (a) the use of the property in the execution of the crime, whether it was deliberate and planned or incidental and fortuitous, (b) the importance of the property to the success of the illegal activity, (c) the time during which the property was used illegally and the spacial extent of the use, (d) whether the use was isolated or repeated, and (e) whether the property had a specific use for drug related activity or whether it was used for general purposes. *Id.* at 365.

Applying the *Chandler* test to the facts of this case, I would conclude the forfeiture was excessive. First, there is an insufficient nexus between the offense and the property. The facts shown in the light most favorable to the nonmoving party show two sales of marijuana in an amount not exceeding $75 being sold in Swallow's home. A third sale of $20 worth of marijuana took place in the alley behind Swallow's home ten days prior to these two sales, but the affidavit does not make clear whether the alley is part of Swallow's property. In terms of drug quantities, no more than 3 to 4 ounces were involved. *See Chandler,* 36 F.3d at 361 (marijuana valued at $500–$600 per pound). Three to four ounces is easily carried on one's person. Contrary to the government's repeated assertions in its briefs, there is no evidence in the affidavit or elsewhere indicating that any marijuana was stored at Swallow's home.

The use of the property by the claimant under these facts appears to be incidental. The police initiated the purchases. The two

times that the confidential informant purchased marijuana in Swallow's home, the confidential informant approached Swallow to purchase marijuana while Swallow was at his home. When Swallow was not in his home, the sale was consummated in the alley behind his house.

The property was the situs of illegal activity for only a very brief time. The home was implicated in two purchases taking place on two consecutive days. The drugs might well have been on Swallow's person the entire time. No search warrant was issued in this case. This case is distinguishable from cases where property is used for storage. *See, e.g., Chandler,* 36 F.3d at 361 (one to two pounds of marijuana in basement, bales of marijuana in garage).

The property was used for normal residential purposes as Swallow's home. No drugs were found stored in the home. Swallow had no role in selecting the place of the drug purchases. The police, in coordination with the confidential informant, arranged for the purchases to take place at Swallow's home. Under the *Chandler* test, the forfeiture of Swallow's home would be excessive given these facts.

In *United States v. 9638 Chicago Heights,* 27 F.3d 327 (8th Cir.1994), the Eighth Circuit refused to decide whether the seizure of claimant Long's property violated the Excessive Fines Clause, since it dismissed the action on due process grounds. The court noted, however, that it disagreed with the district court's adoption of Justice Scalia's relationship test: "the test applied by the district court is inadequate because it conflates the Eight Amendment excessive fine analysis with the section 881(a)(7) nexus requirement." 27 F.3d at 330. The court indicated that the Eighth Amendment requires a broader analysis. Relevant factors the court suggested might include "the monetary value of the property, the extent of criminal activity associated with the property, the fact that the property was a residence, [and] the effect of forfeiture on innocent occupants" among others. *Id.* at 330–31.

The Eighth Circuit's consideration of monetary value of the property suggests a pro-

portionality analysis, an approach criticized by the Fourth Circuit in *Chandler, see* 36 F.3d at 365,[1] but adopted by some courts. *E.g., United States v. R.R. No. 1 Box 224,* 14 F.3d 864, 874–75 (3rd Cir.1994); *United States v. 6625 Zumirez Drive,* 845 F.Supp. 725, 732–33 (C.D. Cal.1994).

In the case at bar, the district court applied in part a proportionality analysis. The court compared the value of the property forfeited, estimated by the government to be $83,700, with the nature of the offense. In addressing the offense, the court referred to the possible punishment that Swallow could have received, given his prior convictions, were he prosecuted under federal law: imprisonment of up to ten years and a potential fine of $500,000 on each count. (App. at 54.) The court then added together Swallow's actual fine of $6,000 and the value of his house, $83,700, and concluded that the forfeiture penalty was "not disproportionate to the severity of the offenses when viewed in light of the penalty [Swallow] could have received under federal law for those offenses." (App. at 54–55.)

The district court's comparison to the potential fine of $500,000 is unrealistic. Swallow has not been prosecuted under any federal law. Even if he were prosecuted successfully, the likelihood, under these facts, that he would receive such a fine is, for all practical purposes, non-existent.

The parties ask this court to adopt a multi-factor test similar to the one developed in *Zumirez Drive.* That test includes the following factors: "(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use." 845 F.Supp. at 732.

I agree with the majority that this is not the case in which we should attempt to adopt a test for this circuit. For myself, I would prefer to see the district courts continue to use a case-by-case approach applying what they deem to be the relevant factors under the facts presented. Given the large volume of forfeitures nationwide, the likelihood is great that we will be receiving further guidance from the Supreme Court.

---

**1.** The *Chandler* court pointed out that there is no history of a proportionality principle under the Excessive Fines Clause. 36 F.3d at 365. Rather, that principle has traditionally been associated with the Cruel and Unusual Punishment Clause. *Id.* The proportionality test prohibits sentences that are "disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (life imprisonment without parole for offender who committed seventh non-violent felony by uttering a 'no account' check in the amount of $100 constituted cruel and unusual punishment). The *Solem* Court devised a three-part test that has been widely used in constitutional proportionality analysis, considering: "1) the inherent gravity of the offense, 2) the sentences imposed for similarly grave offenses in the same jurisdiction, and 3) sentences imposed for the same crime in other jurisdictions." 36 F.3d at 365 (citing 463 U.S. at 290–91, 103 S.Ct. at 3010).

Recent cases question the applicability of a proportionality principle to the Eighth Amendment at all. In *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), Justice Scalia and Chief Justice Rehnquist opined that the proportionality principle did not exist in the Eighth Amendment. See *id.* at 962–94, 111 S.Ct. at 2684–86. In a separate opinion, Justice Kennedy, joined by Justices O'Connor and Souter, limited the scope of *Solem,* stating that the Eighth Amendment only forbids "extreme sentences that are 'grossly disproportionate' to the crime." 501 U.S. at 1001, 111 S.Ct. at 2705. Given there is no history of a proportionality principle under the Excessive Fines Clause, and § 881(a)(7) does not limit the value of property subject to forfeiture, the *Chandler* court rejected the application of the principle to forfeiture analysis.