**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**REAL PROPERTY KNOWN AND NUMBERED AS 415 EAST MITCHELL AVENUE, CINCINNATI, OHIO, with all appurtenances, improvements and attachments thereon, Defendant,**

**and**

**Jerome Lyles, Claimant–Appellant.**

**No. 97–3642.**

United States Court of Appeals,
Sixth Circuit.

Submitted June 15, 1998.

Decided July 20, 1998.

James M. Coombe (briefed), Office of the U.S. Attorney, Cincinnati, OH, for Plaintiff–Appellee.

Elizabeth R. Murray (briefed), Cincinnati, OH, Defendant and Claimant–Appellant.

Before: KENNEDY, GUY, and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Claimant, Jerome Lyles, appeals the decision of the district court granting summary judgment to the United States of America in this civil forfeiture action pursuant to 21 U.S.C. § 881(a)(7), which authorizes forfeiture of real property used in connection with the commission of certain drug violations. The court also denied claimant's motion for summary judgment and his motion to suppress evidence obtained by the police in executing a search warrant of the defendant property, known as 415 E. Mitchell Avenue in Cincinnati, Ohio. Because we conclude that no genuine issue of material fact remains as to whether (1) the property was used to cultivate marijuana, a violation subject to § 881(a)(7); and (2) the forfeiture of the house, valued at $220,000, was not an excessive fine, we affirm.

## I.

On July 1, 1994, an anonymous caller contacted the "Crime Stoppers" Unit of the Cincinnati, Ohio, Police Department and related that claimant was growing marijuana in his home at 415 E. Mitchell Avenue, located in the North Avondale area of Cincinnati. The caller further stated that Lyles kept marijuana in a freezer in the residence and might have a safe in the bedroom. The information was relayed to the department's drug trafficking unit, Operation Street Corner. Officer Evan Evans, who had been assigned to the unit since 1984, began an investigation. On July 21, 1994, he and other members of the unit recovered three trash bags that had been abandoned in front of 415 E. Mitchell Avenue. Inside they found correspondence addressed to Lyles at that address. They also found approximately 6 grams of marijuana.

Based on the caller's information and the marijuana, the next day Evans requested a search warrant for 415 E. Mitchell Avenue. The affidavit in support of the request stated in pertinent part as follows:

The affiant, a Cincinnati Police Officer with training and experience in drug investigations has within the last 72 hours conducted an investigation on Jerome Lyles cntr# 1942210 who resides at listed address. Brother officers responded to the address listed and recovered discarded trash at the curb of the street. Officers recovered three sealed plastic bags. The trash recovered contained Marijuana and personal papers of Jerome Lyles and bearing the address of 415 East Mitchell Avenue. Marijuana tested positive. Street Corner officers have information that Je-

rome Lyles is storing Marijuana on said premises.

A municipal court judge granted the application and issued a warrant. That afternoon, officers found over 200 grams of marijuana contained in three plastic baggies in the freezer of the residence. They also found marijuana seeds stored in the refrigerator. In the basement they located several pounds of marijuana, three large incubators, and 19 marijuana plants.

Lyles was indicted for drug abuse in violation of Ohio Rev.Code Ann. § 2925.11 (Anderson 1996), and for trafficking in marijuana in violation of Ohio Rev.Code Ann. § 2925.03(A)(3), .03(A)(6) (Anderson 1996). He moved to suppress the evidence seized on the grounds that the search warrant was not supported by probable cause. The motion was granted. The Ohio Court of Appeals reversed that decision. *State v. Lyles*, No. C–950485, 1996 WL 122653 (Ohio Ct.App. Mar. 20, 1996). Lyles then entered a guilty plea to trafficking in drugs for cultivation of marijuana, as alleged under Count 2 of the indictment. *See* OHIO REV.CODE ANN. § 2925.03(A)(3). He was sentenced to one year of imprisonment, which was suspended, and received two years of probation.

▮▮▮ Shortly after Lyles' indictment was returned in 1994, the United States filed this civil forfeiture action against the defendant property. Lyles filed a claim as record owner of the property. The action was stayed, pending the state criminal proceedings, but went forward following Lyles' guilty plea. The parties filed cross-motions for summary judgment, and, in connection with his motion, claimant also filed a motion to suppress the evidence seized pursuant to the search warrant. Upon consent of the parties, the matter was referred to a magistrate judge for final disposition. *See* 28 U.S.C. § 636(c). The magistrate judge held a hearing on the motions. At that time he pointed out that he had been the municipal court judge who had issued the search warrant in the underlying

state criminal proceedings. Claimant did not move for recusal.[1] Following the hearing, the magistrate judge issued his opinion granting plaintiff's motion for summary judgment. He found a "strong nexus" between the defendant property and the criminal activity. He also rejected any claim that forfeiture would constitute an excessive fine. In denying Lyles' motion to suppress, he ruled that Lyles was collaterally estopped from relitigating this issue. Claimant now appeals.

## II.

We review de novo the granting of summary judgment. *See, e.g., United States v. Certain Real Property Located at 11869 Westshore Dr.,* 70 F.3d 923, 926 (6th Cir. 1995). Although we must draw all justifiable inferences in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), summary judgment is appropriate when there is no genuine issue of material fact. 70 F.3d at 926 (citing FED.R.CIV.P. 56).

### A. Probable Cause for Seizure

▮▮▮ Federal law requires forfeiture of real property used in connection with certain felony drug violations. *See* 21 U.S.C. § 881(a)(7). The law provides as follows:

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

*U.S. Currency,* 70 F.3d 438, 440 (6th Cir.1995). Although we find no error requiring reversal, the better practice would have been for the magistrate judge to recuse himself.

---

1. Claimant includes an ineffective assistance of counsel claim based on this conduct. This court has unequivocally held, however, that there is no Sixth Amendment right to counsel in a civil forfeiture proceeding. *United States v. $100,375 in*

To support a seizure, the government has the burden of showing probable cause that there was a connection between the defendant property and drug activity. *See, e.g., United States v. Premises Known as 526 Liscum Drive*, 866 F.2d 213, 216 (6th Cir.1989). Claimant asserts that absent the evidence that was allegedly unlawfully obtained pursuant to the search warrant, there would be no probable cause for seizure. The magistrate judge refused to consider the lawfulness of the search warrant on the grounds of collateral estoppel. We review de novo the applicability of collateral estoppel. *See, e.g., United States v. Sandoz Pharmaceuticals Corp.*, 894 F.2d 825, 826 (6th Cir.1990).

■■■ The doctrine of collateral estoppel applies if the following requirements are met: (1) the issue in the prior proceeding must have been identical to the issue asserted in the current matter; (2) the issue must have been actually litigated; and (3) it must have been necessary and essential to the judgment on the merits. *See United States v. Three Tracts of Property Located on Beaver Creek*, 994 F.2d 287, 290 (6th Cir.1993). A fourth requirement, that the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceedings, *see, e.g., NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir.1987), was implicit in our analysis in *Beaver Creek*.[2] In that case, we held that the claimant was collaterally estopped from asserting lack of knowledge of criminal use of the property as a defense to forfeiture in light of the claimant's prior criminal conviction for charges relating to marijuana, including manufacturing. We reasoned that the jury must have found that the claimant knew of the criminal use of the property to convict the claimant. Similarly, we conclude Lyles is collaterally estopped from asserting the unlawfulness of the search warrant in this matter in light of his guilty plea.

Claimant argues that this court "has the ability" to review the constitutionality of a state search and should not "hide behind the shroud of collateral estoppel." In support he cites to federal prosecutions in which the courts have conducted independent reviews of state suppression rulings. *See, e.g., Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (state finding of constitutionality of state search is not binding on federal court in criminal prosecution). No criminal prosecution occurred in this case, however, and therefore claimant's authority is inapposite.

■■■ Even if we were to find that the search was unlawful based on an inadequate affidavit, that would not eliminate a finding that probable cause existed sufficient to support a finding of a connection between the defendant property and claimant's drug activity. Lyles does not address the government's argument that his guilty plea is sufficient to establish probable cause to support forfeiture. We agree that this basis alone creates probable cause. At the hearing at which his guilty plea was accepted, Lyles affirmatively acknowledged that his plea of guilty to trafficking in drugs was a "complete admission of guilt" and a "waiver of any and all constitutional, statutory and factual defenses" to the charge admitted. He was aware of the forfeiture action, nevertheless he pleaded guilty to the offense, which subjected him to a potential sentence of "up to a year and a half in the penitentiary," satisfying the requirement under 21 U.S.C. § 881(a)(7) that violations be "punishable by more than one year's imprisonment." He also admitted that the facts underlying the offense involved the cultivation of marijuana at his residence.

### B. Excessive Fine Analysis

■■■ We next consider whether, notwithstanding the existence of probable cause to support the forfeiture of claimant's former residence, forfeiture would constitute an excessive fine in violation of the Eighth Amendment. In *Austin v. United States*, 509 U.S. 602, 622, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that civil in rem forfeitures under § 881(a)(7) are "subject to the limitations of the Eighth Amend-

---

2. As part of his argument, claimant erroneously asserts that the United States is the party against whom estoppel is asserted. Because it was not a party to the earlier proceeding, he argues, estoppel is inappropriate. Clearly estoppel was asserted against claimant, not the government.

ment's Excessive Fines Clause." In a recent decision, *United States v. Bajakajian,* — U.S. —, 118 S.Ct. 2028, 2035–36, 141 L.Ed.2d 314 (1998), the Supreme Court articulated the standard for assessing those limitations: "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." [3] In support of his claim that forfeiture is excessive, Lyles argues that even if he had been convicted on all three state charges, at most, he would have been subjected to an $8,000 fine for what amounted to approximately $20,000 worth of contraband. Instead, he is forced to forfeit a home valued at $220,000. [4]

**3.** The dissent in *Bajakajian* criticizes the majority opinion for conflicting statements regarding whether certain in rem forfeitures are fines at all, and notes that any suggestion that they are not would be "inconsistent or at least in tension with" the Court's decision in *Austin.* — U.S.—, —, 118 S.Ct. 2028, 2046–47, 141 L.Ed.2d 314 (1998). After recognizing that the Double Jeopardy Clause does not bar the institution of a civil, in rem forfeiture action after a criminal conviction, the majority in *Bajakajian* noted that certain civil in rem forfeitures are subject to the Excessive Fines Clause:

It does not follow, of course, that all modern civil in rem forfeitures are nonpunitive and thus beyond the coverage of the Excessive Fines Clause. Because some recent federal forfeiture laws have blurred the traditional distinction between civil in rem and criminal in personam forfeiture, we have held that a modern statutory forfeiture is a "fine" for Eighth Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is styled in rem or in personam. See *Austin v. United States,* supra, at 621–22, 113 S.Ct., at 2811–2812 (although labeled in rem, civil forfeiture of real property used "to facilitate" the commission of drug crimes was punitive in part and thus subject to review under the Excessive Fines Clause). *Id.* at 2034–35 n. 6. At the same time, later in the opinion the majority distinguished the nonpunitive nature of civil in rem forfeitures relating to customs statutes. *Id.* at 2039–40. In a footnote the Court quoted a 1969 statement of the Department of Justice:

The nonpunitive nature of these early forfeitures was not lost on the Department of Justice, in commenting on the punitive forfeiture provisions of the Organized Crime Control Act of 1970:

" 'The concept of forfeiture as a criminal penalty which is embodied in this provision [of the Organized Crime Control Act of 1970] differs from other presently existing forfeiture provisions under Federal statutes where the proceeding is in rem against the property and

Claimant's argument overlooks other relevant factors contained in the record. For example, claimant had a significant marijuana cultivation operation in place at the time of the search, including numerous plants as well as sophisticated technology to further that operation. Were he to have been prosecuted under federal law, he would have faced a potential fine of $250,000. Claimant argues that it is inappropriate to compare the value of the property to that amount. In support, he relies on a partial dissent in *United States v. Real Property Known and Numbered as 429 South Main St.,* 52 F.3d 1416, 1424 (6th Cir.1995) (Guy, J., concurring part and dissenting in part), which would have held that

the thing which is declared unlawful under the statute, or which is used for an unlawful purpose, or in connection with the prohibited property or transaction, is considered the offender, and the forfeiture is no part of the punishment for the criminal offense. Examples of such forfeiture provisions are those contained in the customs, narcotics, and revenue laws.' " S.Rep. No. 91–617, p. 79 (1969). *Id.* at 2039–40 n. 16. The Court's reference to "forfeiture provisions ... in the ... narcotics ... laws" conflicts with the Court's statement earlier in the opinion recognizing that certain civil in rem forfeitures such as those involved in *Austin* are analyzed under the Excessive Fines Clause. Notwithstanding this apparent contradiction, we are confident that this footnote reference to statements by the Department of Justice in 1969 does not undermine the authority of the Supreme Court's 1993 holding in *Austin* applying Eighth Amendment protections to narcotics forfeitures under 21 U.S.C. § 881(a)(7). Moreover, we note that the quotation was used in the context of the Court's discussion of customs forfeitures, not narcotics forfeitures.

**4.** Claimant submitted various documents in support of the value of the house, including an appraisal of $139,000, as well as his own estimate that the house was worth $220,000. The government on appeal uses the $220,000 figure in arguing that forfeiture is not excessive. The magistrate judge weighed the evidence before him and found the $139,000 figure to be credible. The court, however, is not permitted to weigh the evidence at this stage of the proceedings but, rather, is required to construe all reasonable inferences in the light most favorable to the non-movant. *See, e.g., Doe v. Metropolitan Nashville Pub. Schs.,* 133 F.3d 384, 387 (6th Cir.1998) (weighing of evidence "is never appropriate at the summary judgment stage"), *petition for cert. filed,* 66 U.S.L.W. 3750 (U.S. May 13, 1998) (No. 97–1830). Therefore, we employ the $220,000 figure.

forfeiture was excessive. In explaining this position, the dissent stated:

> The district court's comparison to the potential fine of $500,000 is unrealistic. [Claimant] has not been prosecuted under any federal law. Even if he were prosecuted successfully, the likelihood, under these facts, that he would receive such a fine is, for all practical purposes, non-existent.

*Id.* Even if that had been the prevailing view in *South Main,* however, the facts in that case are distinguishable. In *South Main,* claimant's home, which was valued at $83,-700, was implicated in two sales of marijuana that totalled $75 in street value and occurred on two consecutive days. This case, in contrast, involved a sophisticated, on-going cultivation operation. Given that fact, as well as claimant's ability to pay a substantial fine,[5] there would be a greater likelihood of such a fine in any federal prosecution. Under these circumstances, no gross disproportion between the value of the property and the gravity of the offense has been shown, and therefore claimant's excessive fine claim is unwarranted.

**AFFIRMED.**

---

**5.** The record reflects that in 1990 claimant won $10 million in the Ohio Lottery.