70 F.3d 923
 UNITED STATES of America, Plaintiff-Appellee,
v.
CERTAIN REAL PROPERTY LOCATED AT 11869 WESTSHORE DRIVE,
PUTNAM TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN,
TOGETHER WITH ALL OF ITS FIXTURES,
IMPROVEMENTS AND
APPURTENANCES,
Defendant-Appellant,
Kathryn Duprie, Neal Duprie, D & N Bank, Claimants.
 No. 94-1640.
 United States Court of Appeals,
Sixth Circuit.
 Argued and Submitted Aug. 10, 1995.
Decided Dec. 6, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 24, 1996.
 
 Graham L. Teall (argued and briefed), Office of U.S. Attorney, Detroit, MI, for U.S.
 Thomas V. Wilhelm (briefed), Bloomfield Hills, MI, for Certain Real Property Located at 11869 Westshore Drive, Putnam Tp., Livingston County, Mich., Together with all of its Fixtures, Improvements and Appurtenances.
 Peter L. Lemmer, Hancock, MI, for D & N Bank.
 Before: KEITH, KENNEDY, and SILER, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 The Claimants, Neal and Kathryn Duprie ("Dupries") appeal the decision of the district court granting the Plaintiff-Appellee's, the United States Government, motion for summary judgment and denying their motion to dismiss the forfeiture complaint filed against the Defendant-Appellant property, a residence located at 11869 West Shore Drive, Putnam Township, Livingston County, Michigan ("Property"). The granting of the government's motion for summary judgment forfeited the Dupries' interest in the Property. For the reasons stated below, we AFFIRM the district court's decision to grant the government's motion for summary judgment and deny the Dupries' motion to dismiss the forfeiture complaint.
 
 I. Statement of the Case
 
 2
 In April 1992, the Livonia Police Department received information from a confidential informant that Neal Duprie was selling multiple-pounds of marijuana. The Livonia Police made a controlled purchase of marijuana from Neal Duprie at his place of employment. In June, 1992, the confidential informant made a second, multiple-pound, purchase of marijuana from Neal Duprie using prerecorded funds. The second purchase was made on the curtilage of the Dupries' Property.[1] Based on these two purchases the Livonia Police secured a warrant to search two lots--one containing a house and another a pole barn--on the Property.
 
 
 3
 On June 17, 1992, the United States Government filed a complaint for forfeiture seeking the seizure and forfeiture of the Property, pursuant to 21 U.S.C. Sec. 881(a)(7).[2] The state criminal complaint against the Dupries and the federal forfeiture complaint against the Property were based on the above-mentioned marijuana sales by Neal Duprie.
 
 
 4
 The execution of the warrant uncovered various amounts of marijuana throughout the residence, $8,380.00 in cash (some of which were the pre-recorded funds used in the controlled purchases) and several weapons. The Livonia Police also seized approximately 25 pounds of marijuana, which was found in the pole barn. Also, during the execution of the search warrant the police found a "fanny pack" containing a "baggie" of marijuana and Kathryn Duprie's drivers license.
 
 
 5
 When the Dupries arrived at the Property during the execution of the search warrant, they were arrested and charged with violating Michigan State narcotics laws. Neal Duprie pled guilty to a felony charge and was sentenced to eight months incarceration. Kathryn Duprie pled guilty to a misdemeanor drug charge and received a fine.
 
 
 6
 On June 29, 1992, the Dupries filed separate claims to the Property and asserted affirmative defenses to the forfeiture complaint. The affirmative defenses alleged that the search warrant was unconstitutional and that the Property was not subject to forfeiture.
 
 
 7
 On July 30, a claim to the Property and an answer were filed by D & N Bank ("Bank"). The government agreed to recognize the Bank as an innocent lienholder on the Property. A settlement agreement between the government and the Bank was filed with the district court on April 21, 1993.
 
 
 8
 On August 18, 1992, the government served the Dupries with discovery materials seeking, inter alia, admissions regarding their alleged underlying illegal activity at the Property. The Dupries never responded to the admissions, which were later deemed admitted by an order of the district court issued on September 14, 1993. The district court's order found that, in the face of the Dupries' failure to respond, the following facts were deemed admitted: (1) that the Property was used by Neal Duprie to traffic in multiple-pounds of marijuana; (2) that Neal Duprie used the Property to sell multiple-pounds of marijuana in May and June of 1992; (3) that a search of the Property uncovered marijuana in the study, the master bedroom, the garage, the guest room, the kitchen, the living room and in a "fanny pack"; and (4) that Kathryn Duprie was aware of Neal Duprie's drug trafficking activities at the residence.
 
 
 9
 The Dupries filed a motion to dismiss the government's forfeiture complaint on November 1, 1993, arguing that the forfeiture of the Property was unconstitutional under the excessive fines clause of the Eighth Amendment. On November 2, 1993, the government responded to the Dupries' motion to dismiss by filing their motion for summary judgment.
 
 
 10
 In support of their motion for summary judgment, the government filed an affidavit detailing the underlying criminal activity of the Dupries. The affidavit was sworn out by Drug Enforcement Agency ("DEA") Agent Marie Pikiell ("Agent Pikiell"). This affidavit outlined the marijuana trafficking activities of the Dupries and discussed the two marijuana transactions between Neal Duprie and the confidential informant. Agent Pikiell's affidavit also outlined the objects seized during the execution of the warrant.
 
 
 11
 On March 2, 1994, the district court held a hearing to decide both the government's motion for summary judgment and the Dupries' motion to dismiss the forfeiture complaint. At the hearing, the district court requested additional evidence from both parties regarding the value of the marijuana involved in the case. At that time, the government stipulated that the lot containing the well was not forfeitable. In addition, the Dupries stipulated that the pole barn was forfeited. Therefore, the sole focus of the hearing was on forfeiture of the residence.
 
 
 12
 On March 15, 1995, the government complied with the district court's request for additional information and filed its affidavit detailing the value of the marijuana and outlining the underlying criminal conduct of the Dupries. The second affidavit was sworn out by DEA Agent Benjamin McDermott ("Agent McDermott"). Agent McDermott's affidavit established the "street value" of the marijuana found at the Property and the marijuana sold to the confidential informant to be between $64,000 and $89,600. The discovery deemed admitted by the Dupries' failure to answer supported the information provided in Agent McDermott's affidavit. The Dupries failed to take advantage of their opportunity to supplement the record on the value of the marijuana found at the Property.
 
 
 13
 On April 5, 1994, the district court issued its memorandum and order granting the government's motion for summary judgment and denying the Dupries' motion to dismiss the forfeiture complaint. The district court ordered the lots containing the residence and the pole barn be forfeited to the government and dismissed the complaint against the lot which contained the well. In addition, the district court held that the forfeiture did not violate the excessive fines clause of the Eighth Amendment.
 
 
 14
 The district court reached its conclusion by applying both an "instrumentality" test and a "value analysis." The district court determined the house had been used as a "sales office" by the Dupries to facilitate two multiple-pound marijuana transactions in a short period of time. The district court also held that the forfeiture of the house was not excessive after comparing the value of the 32 pounds of marijuana to the value of the house.
 
 
 15
 The Dupries filed a timely notice of appeal.
 
 II. Discussion
 
 16
 On appeal, the Dupries argue the district court erred in finding that the forfeiture of their residence was not an excessive fine under the Eighth Amendment. We find that the district court reached the proper conclusion in ordering the residence of the Property forfeited to the government.A. Standard of Review
 
 
 17
 We review the granting of summary judgment de novo. United States v. $67,220.00 in United States Currency, 957 F.2d 280, 284 (6th Cir.1992). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56; 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). When reviewing the granting of summary judgment in a forfeiture proceeding, an appeals court must view the facts in the light most favorable to the non-moving party. $67,220.00 in United States Currency, 957 F.2d at 284.
 
 
 18
 B. Constitutionality of the Forfeiture Following the Holding
 
 
 19
 in United States v. Austin
 
 
 20
 The Supreme Court has recently held that an in rem order of forfeiture is "payment to a sovereign as punishment for some offense," and is therefore subject to the Eighth Amendment[3] limitation on excessive fines. Austin v. United States, --- U.S. ----, ----, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). Certiorari was granted in Austin to resolve the issue of whether the Eighth Amendment applied to in rem forfeiture. Id. at ----, 113 S.Ct. at 2803. The defendant in Austin had his mobile home forfeited to the government, on a motion for summary judgment, after he sold cocaine to another individual. Id. The defendant appealed the forfeiture order claiming it violated the excessive fines clause of the Eighth Amendment. Id. The Eighth Circuit reluctantly upheld the forfeiture order. Id. Although the circuit court found the government's forfeiture disproportionate to the offense, it concluded that there was no basis for finding that proportionality review of forfeitures was constitutionally required. Id.
 
 
 21
 The Austin court reversed the Eighth Circuit and found that throughout history, forfeiture not only has served a remedial purpose, but also has served as punishment. It remanded the case back to the circuit court so that it could conduct an excessive fines analysis. Id. at ---- - ----, 113 S.Ct. at 2805-12. Despite finding that in rem forfeiture is subject to the Eighth Amendment, the Court in Austin declined the invitation to establish a bright line test. Id. at ----, 113 S.Ct. at 2812. Instead the Court declared that "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." Id.
 
 
 22
 Since the Austin decision, no single test has been universally accepted by the federal judiciary. At least one court has followed the example set by Justice Scalia's concurrence in Austin and has solely utilized an "instrumentality" test. See United States v. Chandler, 36 F.3d 358 (4th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). Other federal courts have adopted a hybrid test which first determines instrumentality factors and then applies a "proportionality" analysis. See United States v. Milbrand, 58 F.3d 841, 847 (2nd Cir.1995); United States v. 6380 Little Canyon Rd., 59 F.3d 974, 983-85 (9th Cir.1995); United States v. 18755 N. Bay Rd., 13 F.3d 1493 (11th Cir.1994) (applying a proportionality analysis in the context of gambling forfeiture); United States v. 9638 Chicago Heights, 27 F.3d 327, 330 (8th Cir.1994); United States v. Myers, 21 F.3d 826 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 742, 130 L.Ed.2d 643 (1995); United States v. RR # 1, Box 224, 14 F.3d 864, 875 (3d Cir.1994); United States v. 143-147 E. 23rd St., 888 F.Supp. 580, 586-87 (S.D.N.Y.1995); United States v. 6625 Zumirez Drive, 845 F.Supp. 725, 732 (C.D.Cal.1994); United States v. 24124 Lemay St., 857 F.Supp. 1373 (C.D.Cal.1994); United States v. 427 & 429 Hall St., 853 F.Supp. 1389, 1399-1400 (M.D.Ala.1994). Finally, although a panel of this Circuit has addressed the excessive fines issue once before, that panel refrained from establishing an excessive fines test since the claimant failed to produce evidence sufficient to demonstrate that the fine was excessive under either an instrumentality or proportionality analysis. United States v. 429 S. Main St., 52 F.3d 1416, 1422 (6th Cir.1995).1. Instrumentality Test
 
 
 23
 While the Court in Austin declined the opportunity to establish a single test for determining whether a forfeiture is an excessive fine, Justice Scalia's concurring opinion proclaims that the appropriate test in an Eighth Amendment excessive fine case should focus on the connection between the property and the illegal conduct, i.e., how the property was used as an "instrumentality" of the crime.[4] Austin, --- U.S. at ----, 113 S.Ct. at 2815 (Scalia, J., concurring). Justice Scalia stated "[t]he relevant inquiry for an excessive forfeiture under [21 U.S.C.] Sec. 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" Id.
 
 
 24
 The Fourth Circuit has embraced the use of the "instrumentality" test for forfeitures pursuant to 21 U.S.C. Sec. 881(a)(7). See Chandler, 36 F.3d at 365. In Chandler, the court found that the forfeiture at issue was not a violation of the Eighth Amendment's excessive fines clause because of the close relationship between the illegal drug trafficking and the property in question. Id. at 366. The defendant was found to have used the property to facilitate drug transactions as well as to store drugs. Id. at 361. Evidence presented by the government at the jury trial showed the defendant made at least one multiple-pound marijuana transaction on the property and used drugs as a form of payment to individuals who worked at the property. Id. The Chandler jury found, "that the property had been used to facilitate the commission of violations of the drug laws, that the property was improved by the proceeds of drug exchanges, and that Chandler could not claim a lack of awareness." Id.
 
 
 25
 The instrumentality test, as established in Chandler, requires a balancing of the following three factors, with no one factor being dispositive, when determining whether forfeiture is excessive: (1) the nexus between the offense and the property and the extent of the property's role in the offense; (2) the role and culpability of the owner; and (3) the possibility of separating the offending property from the remainder. Id. at 365. In determining the nexus between the property and the offense, the Chandler court considered the following:
 
 
 26
 (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spatial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. Id.
 
 
 27
 2. Proportionality Analysis and Hybrid Tests
 
 
 28
 The remaining courts addressing the excessive fines issue have either created or recognized as permissible a hybrid test which first utilizes an instrumentality test and then applies a "proportionality" analysis. See, e.g., 6380 Little Canyon Rd., 59 F.3d at 985-86 (applying instrumentality test first and then performing a proportionality analysis to determine whether in rem forfeiture for unlawful marijuana sale constitutes an excessive fine); see also 6625 Zumirez Drive, 845 F.Supp. at 732-33 (adopting a proportionality analysis that compares the inherent gravity of the offense to the harshness of the crime).
 
 
 29
 Proportionality analysis compares the value of the property to a variety of factors which may include the culpability of the claimant, the gravity of the offense, the relationship of the property to the offense and the harm caused to the community. See, e.g, 6380 Little Canyon Rd., 59 F.3d at 985-86. Use of the proportionality test emanates from the Supreme Court's holding in Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 3009-11, 77 L.Ed.2d 637 (1983). Although Solem dealt with cruel and unusual punishment, the court's analysis in that case has been extended to the excessive fines context. See, e.g., 6380 Little Canyon Rd., 59 F.3d at 983. The Solem Court asserted that a proportionality analysis should be guided by objective criteria, including: (1) the gravity of the offense and the harshness of the penalty; (2) the sentence imposed on other criminals in the same jurisdiction for similar or more serious crimes; and (3) the sentence imposed on other criminals in other jurisdictions for the same crime. Solem, 463 U.S. at 290-92, 103 S.Ct. at 3009-11. The Court determined that all of these factors should be weighed objectively in determining whether a punishment is excessive in violation of the Eighth Amendment. Id.
 
 
 30
 The Fourth Circuit has rejected the application of proportionality analysis to the excessive fines context based in part on the Supreme Court's holding in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Chandler, 36 F.3d at 365. In Harmelin, a majority of the Justices raised questions about the proportionality aspect of the punishment provisions of the Eighth Amendment. Harmelin, 501 U.S. at 964-66, 1001, 111 S.Ct. at 2685-87, 2705. Justice Scalia wrote: "[I]f the Constitution does not affirmatively contain such a restriction [against disproportionate sentences], the matter of proportionality is left to the state constitutions to decide." Id. at 977 n. 6, 111 S.Ct. at 2692 n. 6. Justice Scalia's opinion in Harmelin reasoned that disproportionate punishment had been commonplace in the United States since the inception of the Bill of Rights in 1789. Id. at 987-88, 111 S.Ct. at 2697-98. Justice Kennedy, who was joined by Justice O'Connor and Justice Souter in concurring, disagreed with Justice Scalia's conclusion that the Eighth Amendment did not have a proportionality consideration. Id. at 1000, 111 S.Ct. at 2704. Justice Kennedy, instead, concluded that there is a very limited proportionality analysis since the Eighth Amendment forbids sentences which are "grossly disproportionate to the crime [committed]." Id. at 1001, 111 S.Ct. at 2705.
 
 
 31
 Since neither Harmelin nor Solem specifically involved the excessive fines provision of the Eighth Amendment and since the desire to overrule Solem is expressed by only two members of the Harmelin Court, the effects of Harmelin on the proportionality analysis of excessive fines is unclear. Consequently, most courts have continued to include proportionality analysis as part of a hybrid test in the excessive fines context. See, e.g., Milbrand, 58 F.3d at 847-48. In adopting a hybrid approach, one court reasoned that a combined test "would strike an appropriate balance between curbing judicial discretion and retaining the constitutional norm of proportionality." 427 and 429 Hall St., 853 F.Supp. at 1399 n. 23 (citations omitted).
 
 
 32
 In Milbrand, the Second Circuit, using a hybrid test, found constitutional the forfeiture of the claimant's property which was used to further illegal drug activities. Milbrand, 58 F.3d at 848. The claimant's son openly cultivated 1,362 marijuana plants on and around claimant's property. Id. at 844. After ruling that the claimant could not assert an innocent owner defense, the Milbrand court considered the following factors in order to determine whether the forfeiture was excessive:
 
 
 33
 (1) the harshness of the forfeiture (e.g., the nature and value of the property and the effect of forfeiture on innocent third parties) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such offense;
 
 
 34
 (2) the relationship between the property and the offense, including whether use of the property in the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive; and
 
 
 35
 (3) the role and degree of culpability of the owner of the property.
 
 
 36
 Milbrand, 58 F.3d at 847-48.
 
 
 37
 The Ninth Circuit has applied a "hybrid" test similar to that applied in Milbrand. See 6380 Little Canyon Rd., 59 F.3d at 985. In 6380 Little Canyon Road the Ninth Circuit reversed and remanded the district court's order of forfeiture in order to allow the district court to apply a hybrid test to determine whether the forfeiture was excessive. Id. at 987-88. The first prong of the test called for the government to prove the property was an instrument of the crime based on the instrumentality analysis suggested by Justice Scalia in his Austin concurrence. Id. at 985. The court determined that the initial inquiry was whether the property had "a close enough relationship to the offense to permit its confiscation to any extent." Id. at 982. Once the government established a nexus between the property and the illegal activity, the burden fell on the claimant to show that forfeiture of the property was "grossly disproportionate given the nature and extent of [the claimant's] criminal culpability." Id. at 985. The 6380 Little Canyon Road court determined that a trial court should consider the following three factors when determining the harshness of the forfeiture: "(1) the fair market value of the property; (2) the intangible, subjective value of the property, e.g., whether it is a family home; and (3) the hardship to the defendant, including the effect of the forfeiture on the defendant's family or financial condition." Id. In determining the culpability of the owner, the court advised consideration of the following factors: "(1) whether the owner was negligent or reckless in allowing the illegal use of his property; or (2) whether the owner was directly involved in the illegal activity, and to what extent; and (3) the harm caused by the illegal activity, including (a)(in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community." Id. at 986.
 
 
 38
 While the test established in 6380 Little Canyon Road is the law of the Ninth Circuit, we believe a discussion of an earlier test used by the Central District Court of California in 6625 Zumirez Drive is worthy of mention in this opinion because it provides another viable test for district courts to explore when considering whether a forfeiture violates the Eighth Amendment. The hybrid approach set forth in 6625 Zumirez Drive calls for a consideration of the following three factors with no one factor being dispositive: (1) whether the inherent gravity of the offense is excessive in relation to the harshness of the penalty; (2) whether the property was an integral part of the commission of the crime; and (3) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use. 6625 Zumirez Drive, 845 F.Supp. at 732. The first prong of this test is derived from the proportionality test established in Solem, but is modified to reflect the difference between a cruel and unusual punishment analysis and an excessive fines analysis. See id. at 732-33. Specifically, the Zumirez court concluded that in order to determine the inherent gravity of the offense, the court must first determine into which of the following categories the claimant's conduct falls: "(1) the claimant has been convicted of the criminal act or acts underlying the forfeiture; (2) the claimant has never been charged with any crime; [or] (3) the claimant has been charged and acquitted of the act or acts underlying the forfeiture." Id. at 733. If the claimant's conduct falls outside of the first and most severe category, the court cannot assume the claimant committed the offense and must therefore focus its inquiry solely on the actual involvement of the claimant in the illegal acts underlying the forfeiture. Id. In addition, the first prong of the Zumirez hybrid test includes an inquiry into the value of the property forfeited and the value of the particular type of property involved in order to determine the harshness of the penalty. Id. at 734. The second prong of the Zumirez test requires an instrumentality analysis. Id. The third prong requires that a court consider "whether the defendant property played an extensive or pervasive role in the commission of the crime." Id. This prong is intended to provide a check of the government's "potential for abusive use of the civil forfeiture statutes." Id. at 735.
 
 
 39
 Finally, three other circuits have adopted or indicated a preference for the use of a less detailed hybrid test in the excessive fines context. In 18755 North Bay Road, the Eleventh Circuit adopted a test that compared the defendants' role in the illegal gambling activity to the value of the home to determine that the forfeiture was excessive. 18755 N. Bay Rd., 13 F.3d at 1498. In RR # 1, Box 224, the Third Circuit remanded an excessive fines claim involving in rem forfeiture for illegal cocaine distribution. RR # 1, Box 224, 14 F.3d at 875. Although the Third Circuit chose not to establish an excessive fines test, it directed the district court to look to the proportionality test in Solem for guidance. Id. at 874-75.[5] In addition, the Eighth Circuit, while not establishing a test, has indicated that proportionality analysis should be utilized in determining the constitutionality of a forfeiture. 9638 Chicago Heights, 27 F.3d at 330-331 (expressing dissatisfaction with the application of a pure instrumentality test because such a test fails to take into account the value of the property in monetary terms and the effect the forfeiture would have on innocent residents); see also United States v. Myers, 21 F.3d 826, 831 (8th Cir.1994) (affirming district court's determination that the forfeiture of defendant's farm although harsh, was not disproportionate to the serious crimes for which the defendant was convicted).
 
 3. Analysis
 
 40
 In the instant case, the district court applied both an instrumentality test and a proportionality test. The court used these analyses in order to determine whether the forfeiture of the lot containing the house would constitute an excessive fine under the Eighth Amendment.
 
 
 41
 In applying an instrumentality analysis, the district court concluded that the house was used as a "sales office" in which sales of marijuana were arranged, and that the pole barn was used as the "warehouse," to store the marijuana. Thus, the district court determined that the house was an instrument of the Dupries' marijuana trafficking. We are satisfied that the district court properly found a "nexus" between the Dupries' illegal activities and the house located on the Property.
 
 
 42
 Next, the district court, in what it defined as a "value analysis," applied the principles of the proportionality test. The district court's "value analysis" took into account the "street value" of the drugs found in the pole barn (26 pounds) and the drugs that were sold to the informant (six pounds) and determined the forfeiture of the house did not constitute an excessive fine under the Eighth Amendment. The "street value" of the marijuana, based on Agent McDermott's affidavit, had a range of between $125 to $175 per ounce. This valuation gave the 32 pounds of marijuana a "street value" of between $64,000 and $89,000. The "street" dollar value of the marijuana was then compared to the value of the house, which the government appraised to be at $85,000. Based on these figures, the district court found the forfeiture to be "the functional equivalent of ... a fine of $85,000." In addition, the district court determined that the forfeiture was not an excessive fine because its value did not exceed the potential $250,000.00 fine the Dupries could have been subjected to had they been charged federally for the marijuana found on the Property.
 
 
 43
 We conclude the district court conducted an appropriate analysis to determine whether the forfeiture of the house would be a violation of the Eighth Amendment. However, because of the factually intensive nature of these types of cases, this court chooses not to establish any one test to be applied in every case. There may be situations where the test applied by the district court in the instant case should be applied, while the facts comprising other cases may require the application of a different test to determine whether a forfeiture constitutes a violation of the Eighth Amendment. To that end, we AFFIRM the decision of the district court but decline the invitation of the parties to establish a single test to be used in this Circuit.
 
 III. Conclusion
 
 44
 For the reasons stated above, we AFFIRM the granting of the government's motion for summary judgment and the denial of the Dupries' motion to dismiss the forfeiture complaint by the Honorable Avern Cohn, United States District Court Judge for the Eastern District of Michigan.
 
 
 
 [1]
 The Property is divided into three distinct lots. One of the lots sits across the street from the house and contains a well. The Dupries' residence is situated on a second lot and a third lot contains a pole barn
 
 
 [2]
 21 U.S.C. Sec. 881(a)(7) states:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [3]
 The Eighth Amendment of the constitution states:
 Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. U.S. Const. amend. VIII.
 
 
 [4]
 However the majority did recognize the viability of the "instrumentality" test espoused by Justice Scalia. Austin, --- U.S. at ---- n. 15, 113 S.Ct. at 2812 n. 15
 
 
 [5]
 The RR # 1, Box 224 court also instructed the lower court to model its proportionality analysis after that applied in United States v. Sarbello, a case in which the Third Circuit adopted components of the Solem test to determine whether a criminal RICO forfeiture violated the excessive fines clause of the Eighth Amendment. United States v. Sarbello, 985 F.2d 716 (3d Cir.1993)