UNITED STATES of America,
Plaintiff,

v.

ONE PARCEL OF PROPERTY LOCATED AT 2526 FAXON AVENUE, MEMPHIS, TENNESSEE, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON, Defendant.

No. 99–2598–A.

United States District Court,
W.D. Tennessee,
Western Division.

May 25, 2001.

---

Christopher E. Cotten, Assistant U.S. Attorney, Memphis, TN, for United States of America.

Randall W. Pierce, Mary C. Jermann, Mark A. Fulks, Memphis, TN, for Claimants Lester.

William P. McCaughan, Miami, FL, for Claimant Universal American Mortgage Co.

## ORDER PARTIALLY GRANTING, AND PARTIALLY DENYING, MOTIONS FOR SUMMARY JUDGMENT

ALLEN, United States Magistrate Judge.

Before the court is the motion by plaintiff United States of America (hereinafter "plaintiff" or "the government"), seeking an award by forfeiture of the parcel of property located at 2526 Faxon Avenue, Memphis, Tennessee, with "all appurtenances and improvements thereon" Plaintiff argues that this property was used by claimant Shirley Lester's brother (Calvin McKinley) to store proceeds from illegal narcotics sales, and that claimants Earl Lester and Shirley Lester (the record owners of the property in question, which is their residence) had knowledge of this use, or were willfully blind to such use.

Claimants, however, contend that there is a genuine issue of material fact as to whether they were "innocent owners"

Claimants alternatively argue that, even if they were not "innocent owners", a forfeiture of their home would constitute an "excessive fine", in violation of the Eighth Amendment of the United States Constitution, which prohibits "excessive fines" Claimants therefore contend that summary judgment should be entered in *their* favor, dismissing plaintiff's complaint.

For the reasons hereinafter stated, plaintiff's motion for summary judgment is partially GRANTED, and partially DENIED. Further, claimants' motions for summary judgment are DENIED.

### *Factual Summary* [1]

In January of 1998, federal authorities began investigating Calvin McKinney, regarding his possible involvement in the distribution of narcotics ("crack" cocaine, cocaine, and marihuana) in the Memphis, Tennessee, area (Affidavit of William A. Ricci, p. 1)(hereinafter "Ricci"). The investigation indicated that there were vari-

---

1. As will be seen later, the court, in ruling on a motion for summary judgment, must resolve all factual disputes against the one seeking summary judgment, and must draw all reasonable inferences in favor of the party opposing the motion.

ous locations in and around Memphis, Tennessee, where Calvin McKinney would store marihuana, as well as currency (representing the proceeds of marihuana sales) (Ricci, p. 1).

On September 11, 1998, state and federal officers executed a federal search warrant at 2526 Faxon, Memphis, Tennessee (Ricci, p. 2). As previously indicated, this is the home of claimants Earl Lester and his wife Shirley Lester. The government alleges that the property is valued at approximately $42,000.00, and has liens against it of approximately $3,400.00 and $1,900.00 (Verified Complaint of Forfeiture). Claimants admit the liens but, because of a lack of "sufficient knowledge with which to form an opinion", deny the government's valuation of the property.

When the search warrant was executed, claimants were both present. A drug-sniffing dog alerted at a toolbox hidden behind a movable wall covering a fireplace. The toolbox was opened and found to contain $27,980.00 in currency (Ricci, p. 2). A search of the master bedroom uncovered $5,000.00 in a dresser drawer.

Both Earl Lester and Shirley Lester admitted that the $27,980.00, found in the toolbox on September 11, 1998, belonged to Calvin McKinney, and that they had both agreed to allow McKinney to store it in their home (Earl Lester and Shirley Lester, Responses to Requests for Admissions).

Claimant Shirley Lester admitted that she started keeping money in her house for her brother Calvin McKinney sometime in February of 1998, and Earl Lester admitted that he started helping his wife keep money in his house for Calvin McKinney, beginning sometime in April of 1998 (Responses of Shirley Lester and Earl Lester to Requests for Admissions). The $27,980.00 found in the toolbox at 2526 Faxon was stored there by Calvin McKin-

ney on September 8, 1998 (3 days before the search)(Responses of Shirley Lester and Earl Lester to Interrogatories).

Both Earl Lester and Shirley Lester admitted that they suspected that the money was from some illegal activity on the part of McKinney, but denied that they *knew* that McKinney sold illegal drugs prior to their agreement to store this money for McKinney (Responses to Requests for Admissions). However, somewhat inconsistently, both admitted that, for approximately one year prior to September 11, 1998 (the date of the execution of the search warrant and the seizure of the $27,980.00 from the toolbox), they suspected that Calvin McKinney sold illegal drugs for money, and they further admitted that they suspected that the $27,980.00 found was the proceeds of illegal drug sales (Responses to Requests for Admissions). This suspicion was based on McKinney's life style (he was not employed) (Response to Requests for Admissions by Earl Lester), or on an overheard telephone conversation in April of 1998 (Response to Interrogatories by Shirley Lester).

Shirley Lester admitted being told by Earl Lester, on September 11, 1998, when their house was being searched: "you know your brother is a drug dealer. I've been telling you he was going to get us in trouble" (Response to Requests for Admissions by Shirley Lester).

In cause number CR 99–20035, in the United States District Court for the Western District of Tennessee, claimant Earl Lester was charged by information with conspiring to possess marihuana, from January 1, 1998, to September 11, 1998, and, on the date of the filing of this information, claimant Earl Lester entered into a plea agreement (filed in open court on January 29, 1999), in which he pleaded guilty to conspiracy to distribute marihua-

na, and in which he admitted that he was, in fact, guilty of this offense (Plea Agreement, cause CR–99–20035). In exchange for his plea of guilty, the government promised not to seek charges against Shirley Lester (Plea Agreement).

On June 10, 1999, in CR 99–20035, claimant Earl Lester filed a letter, in which he said, among other things:

> "I know I was wrong for keeping Calvin McKinley (sic) money in J(sic) house Believe me, I regret that I ever got involved with him."

Claimants Earl Lester and Shirley Lester contend that, while they suspected that the money left at 2526 Faxon by Calvin McKinley was from "some illegal activity", they had only suspicion, but not knowledge, that Calvin McKinley was selling drugs at the time they agreed to store money for McKinley at the 2526 Faxon residence, and in fact only suspected as much *after* the money had been stored at 2526 Faxon. Claimants therefore contend that, since there is a genuine issue of material fact (claimants' knowledge), it would be inappropriate to grant plaintiff's motion for summary judgment.

### *Applicable Law*

#### 1. *Summary Judgment*

Summary judgment is appropriate only when there is no genuine issue of material fact and the proponent of the motion is entitled to summary judgment as a matter of law. *Celotex Corp. vs. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. But there is no ex-press or implied requirement in Fed. R.Civ.P. 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Celotex Corp. vs. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548.

In order to prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of he non-movant's case", and on which the party bears the burden of proof. *Street vs. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). At the summary judgment stage, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, but only to determine whether there is a genuine issue for trial. *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to (a fact-finder) or whether it is so one-sided that one party must prevail as a matter of law." *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Barnhart vs. Pickrel, Schaeffer & Ebeling Company, L.P. A.*, 12 F.3d 1382, 1389 (6th Cir.1993).

These general rules apply in civil forfeiture cases. *United States vs. Certain Real Property, 566 Hendrickson Boulevard*, 986 F.2d 990, 995 (6th Cir.1993).

#### 2. *The Government's Initial Burden of Proof Under Previous Law*

The government herein is proceeding under the provisions of 21 U.S.C.

§ 881(a)(7), which provides, where pertinent, as follows:

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . . . . .

"(7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner .. "

Under the law in effect as of the time of the search (September 11, 1998), and as of the time of the filing of the government's civil complaint for forfeiture herein (July 9, 1999), the government, on filing a civil complaint under 21 U.S.C. § 881, had the initial burden of showing probable cause to institute the forfeiture action. *United States vs. Certain Real Property, 566 Hendrickson Boulevard,* 986 F.2d 990, 995 (6th Cir.1993). The probable cause which the government was required to show was "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion". *United States vs. $22,287.00,* 709 F.2d 442, 446 (6th Cir. 1983).

To satisfy § 881, the government had the burden of establishing probable cause to believe that a "substantial connection" or "nexus" existed between the property to be forfeited and the illegal drug activity. *United States vs. 526 Liscum Drive,* 866 F.2d 213, 216 (6th Cir.1989)("substantial connection"); *United States vs. $22,287.00,* 709 F.2d 442, 446 (6th Cir.1983)("nexus"). In fact, the government needed only to establish probable cause to believe that the

property was "intended to be used" in any manner for illegal drug activity. The government need not have established probable cause to believe that the property was actually used to facilitate the illegal drug activity. *United States vs. Lots 12, 13, 14, and 15, Keeton Heights Subdivision,* 869 F.2d 942, 946 (6th Cir.1989).

The government could satisfy its burden of establishing probable cause, even if the owner of the property sought to be forfeited civilly was acquitted of, or never called to defend, criminal charges. *United States vs. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane,* 906 F.2d 110, 111–112 (4th Cir.1990). The government might use hearsay statements to establish probable cause in a forfeiture proceeding. *United States vs. 526 Liscum Drive,* 866 F.2d 213, 217, n. 3 (6th Cir. 1989), *abrogation on other grounds recognized by United States vs. 16510 Ashton,* 47 F.3d 1465, 1470 (6th Cir.1995); *United States vs. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 621–22 (3rd Cir.1989).

As to the requirement that there be a "substantial connection" between the property sought to be forfeited and the illegal drug activity, this connection need not have been "integral, essential, or indispensable", but must have had "more than an incidental or fortuitous connection to criminal activity .." *United States vs. Schifferli,* 895 F.2d 987, 990 (4th Cir.1990); *United States vs. Approximately 50 Acres of Real Property Located at 42450 Hwy. 441 North,* 920 F.2d 900, 903 (11th Cir. 1991). Thus, evidence of a single illegal drug transaction on the premises (here, two ounces of cocaine) would render the property subject to forfeiture. *United States vs. Premises Known as 3639 2nd St. N. E.,* 869 F.2d 1093, 1096 (8th Cir.1989).

Judged by the foregoing standards, it is clear that the government, in its complaint

and in documents filed elsewhere in this court, has established probable cause to believe that the property at 2526 Faxon Avenue was used to facilitate illegal drug trafficking. The affidavit of Agent William A. Ricci establishes probable cause to believe that (1) Shirley Lester was the sister of Calvin McKinley; (2) both she and her husband Earl Lester agreed to allow Calvin McKinley to store his funds in their home; (3) these funds were in a tool box, hidden behind a movable wall covering a fireplace, in 2526 Faxon Avenue; (4) a drug-sniffing dog alerted for the odor of drugs in this toolbox, on September 11, 1998 (the date of the search of claimants' home); and (5) Earl Lester told his wife, at the time of the September 11, 1998, search: "You know your brother is a drug dealer. I've been telling you that he was going to get us in trouble".

All of the foregoing, looked at in its totality, clearly establishes probable cause to believe that Calvin McKinley, with the knowledge of claimants Earl and Shirley Lester, used 2526 Faxon Avenue as a place to store money obtained from illegal drug trafficking, and that this had a substantial connection with McKinley's drug trade.

### 3. Claimants' Burden Under Previous Law

Under previous law, once the government established probable cause to believe that the property sought to be forfeited was used, or was intended to be used, to facilitate drug trafficking, the burden then shifted to the claimants to show by a preponderance of the evidence that the property was not subject to forfeiture. *United States vs. Certain Real Property, 566 Hendrickson Blvd.,* 986 F.2d 990, 995 (6th Cir.1993). The government would be enti-

tled to a judgment of forfeiture upon an unrebutted showing of probable cause. *566 Hendrickson Blvd.,* p. 995.

In *United States vs. Parcel of Land and Residence at 5 Bell Rock Road,* 896 F.2d 605, 606 (1st Cir.1990), then Circuit Judge Stephen Breyer said:

> "The relevant statutory provisions permit the federal government to obtain this property through forfeiture *if* the government shows probable cause to believe that the property was 'used to facilitate the commission of' a serious drug crime, *unless* the owners then show (by a preponderance of the evidence) *either* (1) that the property was not used in this way *or* (2) that any such use was without the owners' 'knowledge or consent' " (emphasis in the original).

Claimants herein make no claim that 2526 Faxon Avenue was "not used in this way" Rather, they contend that the storing of drug money at 2526 Faxon Avenue was without their knowledge or consent (that is, they raise the "innocent owner" defense)[2].

#### a. Lack of Knowledge

The first part of this defense is lack of knowledge. Of course, the claimants would. under previous law, have the burden of establishing, *by a preponderance of the evidence* (not merely probable cause) that they each lacked knowledge of the use of the property by Calvin McKinley to store illegal drug sales proceeds in their home. Consistent with this rule, however, the government might not (as it could in the preliminary question of probable cause) use hearsay evidence to show a lack of a preponderance of the evidence in the claimants' proof. *United States vs. Parcel*

---

2. Claimants' claim of violation of the Excessive Fines clause of the Eighth Amendment

will be dealt with separately later.

*of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 622–23 (3rd Cir.1989).

Where the alleged ignorance amounted to willful blindness, and where the "claimed state of mind was so inconsistent with the uncontested facts", this would have amounted to a "bare denial", insufficient to create a genuine triable issue. *United States vs. One Parcel of Property, Located at 755 Forrest Road,* 985 F.2d 70, 72–73 (2nd Cir.1993). A trial court might find that a claimant's bare claim that he or she had no knowledge was "incredible as a matter of law", lacking even "a scintilla of evidence" to support his or her position. *United States vs. Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 102 (2nd Cir.1990).

> "Where courts have granted the government's motion for summary judgment in forfeiture cases despite the claimant's assertion of ignorance, they have done so because the government has presented so much evidence from which the claimant's actual knowledge can be inferred that the claimant's unsupported assertion of ignorance is simply implausible . ."

*United States vs. 8848 South Commercial Street,* 757 F.Supp. 871, 884 (N.D.Ill.1990).

In this case, it is undisputed that both claimants Earl Lester and Shirley Lester suspected (for approximately seven months (Shirley Lester), and five months (Earl Lester), prior to the September 11, 1998, search of their home) that the money hidden in their house by Calvin McKinney was the proceeds from illegal drug sales (Responses to Requests for Admissions). Claimant Earl Lester pleaded guilty to conspiracy to distribute marihuana. At the time of the search on September 11, 1998, claimant Earl Lester told his wife (claimant Shirley Lester) that she knew her brother was a drug dealer and was going to get them in trouble (Ricci Affidavit, Responses to Requests for Admissions).

While it is true that both denied *knowing* that the money found hidden in their house was proceeds from illegal drug trafficking, this claimed state of mind is so inconsistent with the uncontested facts that it would be implausible and incredible as a matter of law. *United States vs. One Parcel of Property Located at 755 Forrest Road,* 985 F.2d 70, 72–73 (2nd Cir.1993); *United States vs. Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 102 (2nd Cir.1990); *United States vs. 8848 South Commercial Street,* 757 F.Supp. 871, 884 (N.D.Ill.1990). See also *United States vs. Currency $267,961.07,* 916 F.2d 1104, 1108–09 (6th Cir.1990); *United States vs. Parcel of Land and Residence at 5 Bell Rock Road,* 896 F.2d 605, 611 (1st Cir.1990)(claimant's affidavit must be more than "merely colorable", and must "make a difference")

Therefore, a review of all the proof submitted (by both the government and the claimants) indicate that, under previous law, claimants Earl Lester and Shirley Lester could not, as a matter of law, establish by a preponderance of the evidence that they did not know that the money stored in their house by Calvin McKinney was the proceeds from illegal drug sales.

### b. Lack of Consent

A claimant might, under the old law, retain his or her "innocent owner" status, even if he or she fails to prove lack of knowledge by a preponderance of the evidence, if he or she proves lack of consent by a preponderance of the evidence. *United States vs. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 622 (3rd Cir.1989).

The majority of cases hold that it would not be enough for a claimant to prove, by a

preponderance, a general lack of consent to the unlawful activity on the premises. Rather, in order to establish lack of consent, the claimant would be required to prove by a preponderance of the evidence that he or she did all that could be reasonably expected to be done to avoid the illegal taint to the property involved. *United States vs. 141st Street Corp.*, 911 F.2d 870, 878 (2nd Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); *United. States vs. Certain Real Property & Premises Known as 418 57th St.,* 922 F.2d 129, 132 (2nd Cir.1990); *United States vs. All Right, Title, and Interest in 785 St. Nicholas Ave & 789 St. Nicholas* Ave., 983 F.2d 396, 404 (2nd Cir.), *cert denied, sub nom., Beckford vs. United States,* 508 U.S. 913, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993); *United States vs. 15603 85th Avenue No.,* 933 F.2d 976, 982 (11th Cir.1991); *United States vs. One Parcel of Real Estate at 1012 Germantown Road,* 963 F.2d 1496, 1506 (11th Cir.1992).

However, the rule appeared to be different in the Sixth Circuit. In *United States vs. Lots 12, 13, 14, and 15, Keeton Heights Subdivision,* 869 F.2d 942, 947 (6th Cir. 1989), the court said:

> "... the statute with which we are concerned (i.e., 21 U.S.C. § 881(a)(7)) imposes no requirement that a person who claims the status of an 'innocent owner' establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property ... "

Therefore, under previous law, the rule controlling this court was that claimants herein were not required to prove by a preponderance of the evidence that they had done all that they could reasonably be expected to do to prevent Calvin McKin-

ney from using their home as a depository for the proceeds of his illegal drug sales.

Even with this relaxed standard of proof, however, there is no evidence (much less a preponderance of evidence) that claimants Earl Lester or Shirley Lester failed to give their consent to the activity of Calvin McKinney. They admit that they gave him permission to store the money found by the officers at 2526 Faxon Avenue on September 11, 1998 (Responses to Requests for Admissions). They admit that they suspected that the money was from some illegal activity of Calvin McKinney's. They only deny that they *knew* that it was proceeds from illegal drug sales. But, as has previously been determined in this Order, claimants have failed, as a matter of law, under previous law, to establish by a preponderance of the evidence that they lacked the requisite knowledge of the nature and the source of these funds. Accordingly, they have also failed, under previous law, as a matter of law, to establish by a preponderance of the evidence that they did not consent to this conduct by Calvin McKinney.

Thus, under the previous law, the plaintiff United States of America would have been entitled to summary judgment, unless it could be found that the forfeiture would be grossly disproportionate to the gravity of the offense [3].

### 4. The Civil Asset Forfeiture Reform Act of 2000

The Civil Asset Forfeiture Reform Act of 2000 (Public Law 106–185)(hereinafter "the Act") materially altered the various burdens of proof in civil forfeiture actions filed in the federal courts. In Sec. 2(a) of the Act, there is added to Chapter 46 of title 18, United States Code, 18 U.S.C. § 983.

---

**3.** This question will be dealt with separately later in this opinion.

As it relates to the government's initial burden, of proof, Section 983(c) provides, where pertinent, as follows:

"In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property—

"(1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;

. . .

"(3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."

Where a claimant raises the "innocent owner" defense (as claimants have done in this litigation), Section 983(d) provides, where pertinent, as follows:

"(1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

"(2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term 'innocent owner' means an owner who-

"(i) did not know of the conduct giving rise to forfeiture; or

"(ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

"(B)(i) For the purposes of this paragraph, ways in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person, to the extent permitted by law—

"(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

"(II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

"(ii) A person is not required by this subparagraph to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger . . ."

As can be seen from this statute, numerous changes have been made in existing law.

First, the government is not entitled to proceed by civil complaint for forfeiture solely on probable cause, but must establish, by a preponderance of the evidence, that the property is subject to forfeiture[4]. This being true, it cannot proceed on mere hearsay. And a claimant (who has appropriate standing) can now "put the government to its proof", without doing more than denying the government's right to forfeit the property.

If the government establishes by a preponderance of the evidence that the property is subject to forfeiture, a claimant with appropriate standing can raise the

---

**4.** It is not necessary here to examine the requirements of the Civil Asset Forfeiture Reform Act of 2000, relating to any initial seizure of property sought to be forfeited, the filing of *lis pendens*, etc.

"innocent owner" defense, but, consistent with prior law (since this is an affirmative defense), a *claimant* has the burden of proving, by a preponderance of the evidence, that he or she is an "innocent owner".

This new statute effectively overrules the decision of *United States vs. Lots 12, 13, 14, and 15, Keeton Heights Subdivision*, 869 F.2d 942, 947 (6th Cir.1989), to the extent that it holds that the forfeiture statute "imposes no requirement that a person who claims the status of an 'innocent owner' establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property".

While the Civil Asset Forfeiture Reform Act of 2000 provides, in Section 21 thereof, that it "shall apply to any forfeiture proceeding commenced on or after the date that is 120 days after the date of the enactment" thereof (the enactment date being April 25, 2000), and the civil complaint herein was filed on July 9, 1999, it is clear that the Act applies in full force (as regards the respective burdens of proof) to this case. *United States vs. Real Property in Section 9, Town 29 North, Range 1 West Township of Charlton*, 241 F.3d 796, 799–800 (6th Cir.2001).

In light of the *Charlton* case, and the state of the pleadings herein, it seems appropriate to resolve the various motions for summary judgment as if this were an ordinary civil lawsuit– that is, with the plaintiff (that is, the government) having the burden of proving its claims by a preponderance of the evidence, and the defendants (that is, the claimants) having the burden of proving their affirmative defenses by a preponderance of the evidence. Using this analysis, this court concludes that, based upon the pleadings, affidavits, discovery responses, and court documents in related cases, there is no genuine issue of material fact that the property at 2526 Faxon Avenue was used by Calvin McKinney to facilitate his drug trafficking (by being a "cash stash" house). However, there are genuine issues of material fact as to the nature and extent of the knowledge of claimants Earl Lester and Shirley Lester, and the existence *vel non* of their consent to such usage by Calvin McKinney. While it is true that Earl Lester pleaded guilty to a conspiracy to distribute marihuana, this plea does not establish (on its face or on the face of the information) that claimant Earl Lester allowed Calvin McKinney to store proceeds from illegal drug sales at his house in furtherance of the conspiracy. In other words, Earl Lester could have been involved in a drug conspiracy with Calvin McKinney in other ways.

While the assertions by Earl Lester and Shirley Lester (that they only *suspected* that the money Calvin McKinney stored at their house was proceeds from illegal drug trafficking) are suspect, the issue cannot be resolved on summary judgment motion.

### 5. Excessive Fines

Claimants Earl Lester and Shirley Lester also contend that, even if they knew of, and consented to, Calvin McKinney's use of their house to stash proceeds from illegal drug trafficking, the forfeiture of their home would amount to an "Excessive Fine", in violation of the Eighth Amendment of the United States Constitution.

In *Austin vs. United States*, 509 U.S. 602, 604, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applies to efforts by the government to obtain forfeiture of property under 21 U.S.C. § 881(a)(4) and (a)(7). The Court concluded that the question to be answered in such cases is whether the

actions of the government amount to *punishment*. *Austin*, 509 U.S. at 610, 113 S.Ct. 2801[5]. Further, the Court found that forfeiture under 21 U.S.C. § 881(a)(4) and (a)(7) does not serve a solely remedial purpose. *Austin*, 509 U.S. at 622, 113 S.Ct. 2801. However, it remanded the case to the lower court to consider the question of whether, applying some yet unexplicated "multifactor test for determining whether a forfeiture is constitutionally 'excessive'", this particular forfeiture constituted an "excessive fine", prohibited by the Eighth Amendment. *Austin*, pp. 622–623, 113 S.Ct. 2801.

In *United States vs. Certain Property Located at 11869 Westshore Drive*, 70 F.3d 923 (6th Cir.1995), the Sixth Circuit stated that, in determining whether the forfeiture sought by the government was unconstitutional under the Excessive Fines clause of the Eighth Amendment, two tests had emerged, after the *Austin* decision. These were (1) the "instrumentality" test (that is, the court is to focus solely on the connection between the property and the illegal conduct), and (2) a "hybrid" test, using both the "instrumentality" test previously mentioned and a "proportionality" test (comparing the value of the property to a variety of factors). *Westshore*, 70 F.3d. at 928–930. The Sixth Circuit declined to adopt either, saying that, under either test, forfeiture was justified. *Westshore*, 70 F.3d. at 930.

Later, in *United States vs. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the Supreme Court held that, in a criminal prosecution for transporting more than $10,000.00 outside the United States, and making a false statement to the United States Customs Service about it, the actual sum of money involved (here, $357,144.00) could not be fully forfeited (in the same criminal proceeding) if such forfeiture would be "grossly disproportional" to the gravity of his offense. *Bajakajian*, 524 U.S. at 324, 118 S.Ct. 2028.

In *United States vs. Real Property Known and Numbered as 415 East Mitchell Avenue*, 149 F.3d 472 (6th Cir.1998), the Sixth Circuit concluded that, even in a civil forfeiture proceeding against real estate under 21 U.S.C. § 881(a)(7), the "grossly disproportional" standard applies, effectively adopting the so-called "hybrid" test referred to and outlined in *United States vs. Certain Property Located at 11869 Westshore Drive*, 70 F.3d 923 (6th Cir.1995).

Therefore, applying the "hybrid" test to the within case, it seems clear that, if forfeiture of 2526 Faxon Avenue is otherwise appropriate, there would be no violation of the Excessive Fines prohibition of the Eighth Amendment.

There is no doubt that the property was an "instrumentality" in Calvin McKinney's drug trafficking (if it be established that the money found was drug trafficking proceeds). McKinney would have used the property to "stash" the funds from his illegal drug trade so that (1) it would not be easily stolen, and (2) it would not be easily confiscated by police officers.

As to the question of whether (if it be established that the property should otherwise be forfeited) such forfeiture would be "grossly disproportional" to the gravity of the offense, the court in *United States vs. Certain Real Property Located at 11869 Westshore Drive*, 70 F.3d 923, 928–930 (6th

---

**5.** The Supreme Court has concluded that the forfeiture of a defendant's property for a drug offense in a separate civil proceeding under 21 U.S.C. § 881(a)(7) does not constitute "punishment", for purposes of the Double Jeopardy Clause of the United States Constitution. *United States vs. Ursery*, 518 U.S. 267, 270–71, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Cir.1995), spoke of a "variety of factors", including: (1) the culpability of the claimants; (2) the gravity of the offense; (3) the relationship of the property to the offense; (4), the harm caused to the community by the offense; (5) the possible sentence that could be imposed; and (6) a "value analysis" (that is, the value of the property vs. the street value of the drugs)

It should be kept in mind, however, that the *Westshore* court was working with the law as it was then understood, and that the question was "proportionality". However, since the decision in *United States vs. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the test is not "proportionality", but "*gross* disproportionality".

In this case, the property involved was valued by the government at approximately $42,000.00, and, while claimants did not agree to this, claimants never have contended that the value of the property is "grossly disproportionally" higher than the $27,980.00 found hidden on the premises. The gravity of the offense and the harm caused to the community (aiding a largescale drug trafficking operation) is self-evident.

In *United States vs. Certain Real Property at 566 Hendrickson Boulevard*, 986 F.2d 990, 999 (6th Cir.1993), the court held that forfeiture of a claimant's home (valued at $65,000.00), was not "grossly disproportionate" to his crime, where he used the attic as a growing room for marihuana, growing at least 40 marihuana plants. In *United States vs. Real Property Known and Numbered as 415 East Mitchell Avenue*, 149 F.3d 472, 477–78 (6th Cir.1998), the court held that forfeiture of a claimant's residence, valued at $220,000.00, was not an excessive fine, where a search of the residence found 200 grams of marihuana, marihuana seeds, three large incubators, and 19 marihuana plants. It is signif-

icant that in *Mitchell* the court emphasized that this home was part of a sophisticated, on-going operation. *Mitchell*, p. 478. From the guilty plea of Calvin McKinney, it would seem that claimants' home was also part of a "sophisticated, on-going" operation.

Under all these circumstances, there are no genuine issues of material facts to disprove the conclusion that the forfeiture of 2526 Faxon Avenue (if otherwise justified) would not be "grossly disproportionate" to the crime committed.

### *Conclusion*

For the foregoing reasons, the court rules as follows:

1. The government's motion for summary judgment is DENIED, since there is a genuine issue of material fact as to the knowledge of, and/or consent to, the drug-related criminal activity of Calvin McKinney, conducted in claimants' home.

2. The government's motion for summary judgment is, however, GRANTED, insofar as claimants contend that any forfeiture of their home at 2526 Faxon Avenue would constitute an Excessive Fine under the Eighth Amendment.

3. The motions for summary judgment, filed by claimants Earl Lester and Shirley Lester, are DENIED.

IT IS SO ORDERED.